UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REBA B. RANSOM,                              )
                                             )
        Plaintiff,                           )
                                             )
                                             )
                                             )
        v.                                   )      Civil Case No. 14-422 (RJL)
                                             )
ROBERT A. MCDONALD, Secretary, U.S.          )
Department of Veterans Affairs,              )
                                             )
        Defendant.                           )

**FILED**

SEP 3 0 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

MEMORANDUM OPINION
(September 30, 2016) [Dkt. #44]

Plaintiff Reba B. Ransom ("Ransom" or "plaintiff") brings this action against

Robert A. McDonald in his official capacity as Secretary of the United States Department

of Veterans Affairs ("the VA" or "defendant").   Plaintiff was employed with the VA

from 1995 until July 2011, when she was terminated.   Plaintiff alleges in her Complaint

filed in June 2013 that her termination was retaliation for her prior Equal Employment

Opportunity ("EEO") activity, in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. §§ 621 *et seq.*   *See* Compl. ¶ 11 [Dkt. #1].   In April 2014,

plaintiff moved to expand the scope of her lawsuit to include claims for other adverse

employment actions, *see* Mot. for Leave to File Am. Compl. [Dkt. #23], but for the

reasons explained in the VA's opposition to that motion [Dkt. #26], the Court denied

plaintiff's request to amend her Complaint.   *See* Min. Order of May 27, 2014.

Currently before the Court is defendant's Motion for Summary Judgment.   *See* Def.'s

MTD [Dkt. #44].   Despite plaintiff's continued discussion of other adverse employment

actions in her memorandum opposing defendant's Motion for Summary Judgment, Pl.'s

Opp'n [Dkt #46], the Court must limit its disposition here to the only claim before it—the

claim that Ransom's July 2011 termination was the product of illegal retaliation.   Upon

consideration of the parties' pleadings, the entire record in this case, and relevant law, the

Court GRANTS summary judgment in favor of defendant.

## FACTUAL BACKGROUND

Prior to the events giving rise to this case, Ransom was an employee at the Kansas

City, Missouri branch of the VA, in the Office of Healthcare Inspections ("OHI").   *See*

Def.'s Statement of Undisp. Material Facts ¶ 1 ("Def.'s SOF") [Dkt. #44]; Pl.'s Response

to Def.'s Statement of Material Facts & Pl.'s Statement of Genuine Issues ¶ 30 ("Pl.'s

SOF, Part I" and "Pl.'s SOF, Part II") [Dkt. #46-49].   Ransom applied for a promotion to

a GS-14 position in early 2010.   Compl. ¶ 8.   In May 2010, after she was informed she

had not received the position, she filed a formal EEO complaint alleging that the non-

selection was a product of race discrimination.   Def.'s SOF ¶¶ 32-34; Pl.'s SOF, Part I

¶¶ 33-35.   She named Dr. John [David] Daigh ("Dr. Daigh") as one of the discriminating

officials.   *Id.*   Dr. Daigh was the Director of OHI and the selecting official for the

position.   *Id.*; Compl. ¶ 8.   Several months later, in October 2010, she received a

promotion to the GS-14 level.   Def.'s SOF ¶ 1; Pl.'s SOF, Part I ¶ 1.   Dr. Daigh, once

again the selecting official, approved that selection.   Def.'s SOF ¶ 2; Pl.'s SOF, Part I

¶ 2.   In her new position, Dorothy Duncan ("Duncan") was the immediate supervisor of Ransom.  Pl.'s SOF, Part II ¶ 12.   Ransom was also a supervisor herself—she supervised her former co-workers James Seitz ("Seitz") and Jennifer Kubiak.  Def.'s SOF ¶ 3; Pl.'s SOF, Part I ¶ 3.

Several months after Ransom's promotion, on March 8, 2011, Seitz complained to Ransom's supervisor, Duncan, that Ransom had struck him on the forehead a week earlier.  Def.'s SOF ¶ 4; Pl.'s SOF, Part I ¶ 4.  Ransom's explanation of the events is that the physical contact was a friendly "tap" or "pop" that was routine in her interactions with Seitz.  Pl.'s SOF, Part I ¶ 4; Ransom Decl. ¶ 19 [Dkt. #46-28].  Duncan referred the matter to her supervisors, including Dr. Daigh, who referred the matter to the Office of the Inspector General ("OIG") to do a formal investigation of the incident.  Pl.'s SOF, Part II ¶¶ 64, 67.  OIG conducted an independent investigation of the incident, including an interview of Ransom in which she explained that Seitz was a "touchy, feely, lovey kind of person" and that she had no way of knowing that her physical contact was unwelcome.  Pl.'s SOF, Part I ¶¶ 8-10.  Ransom also told the OIG investigators that she believed the dispute could be explained by the fact that Seitz was angry that she had been promoted instead of him.  Pl.'s SOF, Part I ¶¶ 12-16.  She claimed that Seitz's behavior toward her had changed ever since her promotion in October 2010.  *Id.*  She claimed he was mentally unstable, causing her to fear for her safety.  *Id.*

OIG issued a report of its findings a couple of weeks after its interviews, in April

3

2011.  Def.'s SOF ¶ 19; Pl.'s SOF, Part I ¶ 19.   Citing interview testimony, it found that

Ransom had struck Seitz on the head with an inappropriate amount of force, concluding it

rose to the level of "assault."  Pl.'s SOF, Part I ¶¶ 20-21.   It also concluded that her

attempts to pass the conduct off as "routine" were incredible, that she had falsified Seitz's

mental instability, and that there was no basis for her to fear for her safety.  *Id.* ¶¶ 22-24.

On May 10, 2011, Duncan issued a notice of proposed removal, naming the three

grounds contained in the OIG report: (1) assault on an employee, (2) intentional

falsification, misstatement, or concealment of a material fact (*i.e.*, misrepresenting a

"touchy" relationship with Seitz that would have made her physical contact "routine"),

and (3) making false or unfounded statement which are slanderous or defamatory about

VA personnel or officials (*i.e.*, alleging Seitz was mentally unstable and dangerous).  *Id.*

¶ 26.   Seven days after Duncan issued the notice, on May 17, 2011, Ransom filed an

EEO complaint against Duncan.   Regan Decl., Ex. 18 [Dkt. #44-2].   She also filed a

reply to the notice, contending that Duncan had initiated the removal action as retaliation

for her protected EEO activity and alleging that Duncan was skeptical of Ransom's

promotion and "made negative references about Ransom for having filed her original

EEO complaint."  Pl.'s SOF, Part II ¶ 124; Reply to Proposed Removal 1-2 [Dkt. #46-

21].

The notice and reply were referred to Patricia Christ, the Deputy Assistant

Inspector General for OHI ("Deputy Assistant Christ"), who served under Dr. Daigh.

Def.'s SOF ¶ 28; Hr'g Tr. 86-105 (Christ Testimony) [Dkt. #46-44]; Christ Decl. [Dkt. #44-3]. After an independent review of the OIG report, and a determination that the Seitz-Ransom incident was sufficiently serious, especially because it involved a supervisor's treatment of a direct report, Deputy Assistant Christ decided to terminate Ransom in July 2011. Def.'s SOF ¶¶ 29-31; Hr'g Tr. 86-105 (Christ Testimony) [Dkt. #46-44]; Christ Decl. [Dkt. #44-3].

Ransom appealed the termination decision under the Civil Service Reform Act. In February 2012, an administrative law judge ("ALJ") of the Merit Systems Protection Board held a hearing as to the removal decision wherein she questioned Deputy Assistant Christ about the reasons for her decision. *See* Pl.'s Opp'n 22; *Ransom v. Dep't of Veterans Affairs*, 2012 M.S.P.B. LEXIS 1235 (M.S.P.B. Feb. 28, 2012). Deputy Assistant Christ opined that the "assault" finding was perhaps the most important to her decision. Pl.'s Opp'n 22. The ALJ ultimately vacated the removal action and remanded the matter back to the VA with specific findings, including that the physical contact at issue did not rise to the level of "assault." *See id.* Upon remand, Deputy Assistant Christ once again terminated Ransom, this time on the sole ground that she made false or unfounded statements. *See id.* at 23. That decision was upheld by the Merit Systems Protection Board on appeal. *See id.*; *Ransom v. Dep't of Veterans Affairs*, 2013 M.S.P.B. LEXIS 2780, at *10-13 (M.S.P.B. May 24, 2013).

## STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   Although the burden is on the movant to show that there is no dispute of fact or that the evidence is so one-sided that it must prevail as a matter of law, when the movant files a properly supported summary judgment motion, the burden switches to the non-moving party to produce evidence that would support a jury verdict.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 256 (1986).   The non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

The court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the party opposing summary judgment.   *Id.* at 255.   To the extent that the non-moving party will bear the burden of proving facts at trial, however, those facts must be supported by competent evidence, and the absence of such evidence can form the basis for summary judgment.   *See Celotex*, 477 U.S. at 322–24.   A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## ANALYSIS

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

6

employment, because of the individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000(e)–2(a)(1).   Title VII similarly prohibits employers from retaliating

against an employee because that employee "has opposed any practice made an unlawful

practice by [Title VII], or because he has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under [Title VII]."

42 U.S.C. § 2000(e)–3(a).   Our Circuit has instructed that, at the summary judgment

stage, it is "an unnecessary and improper 'sideshow'" to decide whether a plaintiff in a

retaliation suit has made out a *prima facie* case.   *Jones v. Bernanke*, 557 F.3d 670, 678

(D.C. Cir. 2009) (quoting *Brady v. Office of the Sergeant at Arms, U.S. House of*

*Representatives*, 520 F.3d 490, 493 (D.C. Cir. 2008)).   Where, as here, the employer

asserts a legitimate, non-retaliatory reason for the removal action challenged, the only

relevant inquiry is whether the employee has put forth sufficient evidence for a

reasonable jury to conclude that the employer's proffered explanation is a mere pretext

and the employer intentionally retaliated against the employee.   *Id.*   Summary judgment

must be granted for the defendant if the plaintiff fails to "produce sufficient evidence that

would discredit [the employer's proffered explanation] and show that the actions were

retaliatory."   *Baloch v. Kempthorne*, 550 F.3d 1191, 1200 (D.C. Cir. 2008).   Moreover,

it is not enough for the plaintiff to produce evidence that retaliation was a "motivating

factor" in the removal action; rather, it must put into genuine dispute that "the desire to

retaliate was the but-for cause of the [removal] action."   *Univ. of Tex. Sw. Med. Ctr. v.*

*Nassar*, 133 S. Ct. 2517, 2528 (2013).

Here, plaintiff's retaliation claim fails because no reasonable factfinder could infer from the record that plaintiff's prior EEO activity was the but-for reason for plaintiff's termination.   Defendant has produced ample evidence that plaintiff was terminated by Deputy Assistant Christ, who relied on her honest and reasonable belief that the OIG report accurately reflected misconduct that warranted plaintiff's removal, and who had no reason to retaliate against Ransom.[1]   *See* Def.'s SOF ¶¶ 29-30; *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) (question is whether the decisionmaker "honestly and reasonably believed in" the reasons given).   The record clearly demonstrates that she made the termination decision in July 2011 for legitimate reasons, namely that she believed plaintiff made unwanted physical contact with one of her direct reports and then lied about the her relationship with him and his mental instability in order to attempt to evade the consequences of his reporting the incident.[2]   *Id.* ¶¶ 19-24, 29-30; Regan Decl. Ex. 8, Ex. 15, Ex. 16 at 86-92 [Dkt. #44-2]; Christ Decl. ¶¶ 3-4 [Dkt. #44-3].   Plaintiff

---

[1] Plaintiff's argument that the report had "holes" or that *Duncan* failed to read it in its entirety, Pl.'s Opp'n 43-44, are wholly irrelevant to Deputy Assistant Christ's good faith reliance on the report. Additionally, the Court declines to address the various times when plaintiff's opposition includes Deputy Assistant Christ's name in its general accusations, but does not include any specific support as to Christ.
[2] The Court will not consider the claim that Deputy Assistant Christ's 2012 decision to reinstitute Ransom's termination was the retaliatory decision "truly" at issue here. Pl.'s Opp'n 42-43.   The later-in-time MSPB proceedings shed no light on what Deputy Assistant Christ honestly and reasonably believed in 2011.   Plaintiff does imply that if Deputy Assistant Christ's 2012 decision was unsupportable and motivated instead by retaliatory animus, then a jury could infer backwards that she held the same inappropriate motive in 2011.   But the record does not support that logic because the MSPB ultimately held Deputy Assistant Christ's 2012 decision *was* supportable. *Ransom v. Dep't of Veterans Affairs*, 2013 M.S.P.B. LEXIS 2780, at *10-13 (M.S.P.B. May 24, 2013).

makes several arguments in an attempt to undermine this legitimate explanation, none of which have merit.

Plaintiff tries to change the focus of the Court's scrutiny by arguing that the VA is liable not only for Deputy Assistant Christ's good faith decision based on the OIG report, but also, under *Staub v. Procter Hospital*, 562 U.S. 411 (2011), for Duncan's decision to refer the dispute up the chain of command and Dr. Daigh's decision to refer it to OIG. In *Staub*, a plaintiff-employee was terminated after an allegedly biased supervisor made an allegedly false accusation on which an independent, unbiased third-party at least partly relied in deciding to terminate the plaintiff. *Id.* at 414-15. The Court held that the third-party decision could not immunize the employer as a matter of law from the harm caused by the allegedly discriminatory accusation. *Id.* at 418-22. Plaintiff argues that Duncan and Dr. Daigh's decisions were both, like the false accusation in *Staub*, "based on [retaliatory] animus that was intended to cause . . . an adverse employment action." Pl.'s Opp'n 41 (quoting *Staub*, 562 U.S. at 421). Unfortunately, *Staub* is inapposite for two reasons.

First, unlike in *Staub*, plaintiff has not credibly accused either of the relevant actors of retaliatory animus. Plaintiff here has not produced any reasonably reliable evidence that Duncan had any retaliatory motive when she referred the dispute to OIG. At most, plaintiff has demonstrated that Duncan was aware of Ransom's 2010 EEO activity and that she was concerned about EEO activity in general. *See* Hr'g Tr. 396

(Stones Testimony) [Dkt. #46-45]; Kubiak OIG Tr. 77-81 [Dkt. #46-38].   The only

direct link between Duncan and Ransom in this regard occurred *after* the OIG report had

already been issued, when Ransom filed an EEO complaint against Duncan.   And

although the question may be closer with respect to Dr. Daigh, who had been the subject

of Ransom's EEO complaint prior to the referral decision, the record as a whole is such

that no reasonable jury could conclude that Dr. Daigh, who had promoted Ransom after

that EEO complaint, was harboring any animus toward her.   Indeed, his decision to refer

the Seitz-Ransom dispute to an independent body would not have been a very effective

way of retaliating against Ransom if Ransom's behavior did not warrant the

investigation.   As such, the only conclusion one could reasonably draw regarding the

referral is that Dr. Daigh was acting with an abundance of caution, not animus.[3]

But even if a reasonable jury could find Duncan's, or Dr. Daigh's, referral of the

matter to be somehow retaliatory, *Staub* liability does not attach for a second reason.

*Stuab* requires that the retaliating supervisor's act is the *proximate* cause, not just the but-

for cause, of the adverse employment action.   562 U.S. at 422.   Here, plaintiff advances

---

[3] Plaintiff's evidence of other possible instances of OHI managers retaliating for EEO activity does not change this conclusion.   *See* Pl.'s SOF, Part II, ¶¶ 137-179.   Plaintiff's strongest argument is that these other cases are relevant under the Supreme Court's decision in *Sprint v. Mendelsohn*, 552 U.S. 379 (2008), because they involved Dr. Daigh as the named official in the EEO complaint and could therefore be probative of a general practice when employees file EEO complaints against him.   *See* Pl.'s Opp'n 34-36; *Elion v. Jackson*, 544 F. Supp. 2d 1, 8 (D.D.C. 2008) (court should determine relevance by considering, *inter alia*, "whether the same decisionmakers were involved").   But two of the three instances of alleged retaliation that plaintiff points to have been adjudicated in favor of the VA, *see* Def.'s Reply 18, and Dr. Daigh was not the alleged source of the retaliatory conduct in the remaining case. Walls Decl. ¶¶ 10-13 [Dkt. #46-31].

a theory of but-for causation, but that chain of causation is broken by an independent OIG inquiry. *See Hampton v. Vilsack*, 685 F.3d 1096, 1100 (D.C. Cir. 2012); *cf. Griffin v. Washington Convention Ctr.*, 142 F.3d 1308, 1312 (D.C. Cir. 1998) ("[E]vidence of a subordinate's bias is relevant where the ultimate decision maker is not insulated from the subordinate's influence."). Unlike in *Staub*, plaintiff does not allege that the accusation at the heart of the OIG report was itself falsified for a retaliatory purpose. Indeed, plaintiff has failed to produce any evidence that the findings of the inquiry were affected by retaliatory animus. *See Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 297 (D.C. Cir. 2015). Therefore, regardless of the reason for the investigation, the results of the investigation were an independent review of the facts and, thus, a legitimate basis on which to take removal action against Ransom.

Having failed to undermine the legitimacy of the OIG report as a basis for the termination decision, plaintiff must produce evidence that could reasonably suggest Deputy Assistant Christ relied not on the report but on a retaliatory motive when she rendered her removal decision in July 2011. But, like Duncan when she referred the Seitz-Ransom dispute up the chain of command, Deputy Assistant Christ had no reason to retaliate against Ransom when she made the termination decision. At most, she knew that Ransom had made EEO complaints about Dr. Daigh and, by that time, Duncan as well.

Plaintiff attempts to muddy the waters, however, by alleging that Ransom's

11

managers, as an indistinguishable group, were exercising retaliatory intentions.   The

most coherent of these theories seems to be that a jury could first infer that Dr. Daigh had

a retaliatory motive and could then impute that motive to Deputy Assistant Christ.   Pl.'s

Opp'n 39-40; Pl.'s SOF Part II, ¶ 127 (citing Daigh Dep. 39; Hr'g Tr. 210-11 (Daigh

Testimony); Hr'g Tr. 105 (Christ Testimony)).   That is a bridge too far.   Even assuming

Dr. Daigh had a retaliatory motive, plaintiff cannot point to any credible evidence of

influence.   None of the testimony that plaintiff refers to even remotely suggests that Dr.

Daigh influenced Deputy Assistant Christ's decisions.   Indeed, it suggests the opposite!

Both Dr. Daigh and Deputy Assistant Christ deny that he had any influence.   Hr'g Tr.

104:9 (Christ stating "I never discussed that with him") [Dkt. #46-44]; *id.* at 210:11-12

(Daigh stating "I was not involved with that"); *see also* Daigh Dep. 40:1-4 [Dkt. #46-35].

At most, the evidence supports that he was apprised of the OIG report results, knew that

Deputy Assistant Christ would be deciding what action to take with respect to Ransom,

and spoke to Deputy Assistant Christ prior to the decision, but only in a routine way as he

did "a thousand times a day."   Daigh Dep. 39:10-11; Hr'g Tr. 210:20-22.

Finally, plaintiff tries to cast doubt on Ransom's managers as an indistinguishable

group by "produc[ing] evidence suggesting that the employer treated other employees . . .

more favorably in the same factual circumstances."   *Brady*, 520 F.3d at 495.   But

Ransom has failed to produce any truly comparative evidence from which a reasonable

trier of fact could infer pretext.   She describes two situations in which similar physical

12

conduct did not result in an OIG investigation or any disciplinary action.   Pl.'s Opp'n 29-30; Pl.'s SOF, Part II, ¶¶ 143-49, 180-183.   But, as discussed above, the decision to refer the Seitz-Ransom dispute to OIG, even if it can be credibly attributed to a retaliatory motive, is legally irrelevant.   And plaintiff provides *no* comparative evidence to demonstrate how employees are usually treated when OIG makes the type of findings that it did here.   Nothing in the record could therefore reasonably suggest that other employees in similar situations have been treated more favorably.

Because plaintiff has failed to raise any credible doubts that Ransom was terminated in 2011 for any reasons other than the legitimate ones the VA claimed, defendant is entitled to summary judgment as to plaintiff's claim of retaliation.

## CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment is GRANTED.   An Order consistent with this decision shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge